In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00114-CV
______________________________


Â 
IN THE MATTER OF K. T., A CHILD
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law
 Gregg County, Texas
Trial Court No. 3748-J


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â K. T. appeals his adjudication and disposition for two offenses of misdemeanor assault, after
proof he had twice before been adjudicated for felony offenses. He was committed to the Texas
Youth Commission. 
Â Â Â Â Â Â Â Â Â Â Â Â K. T.'s counsel has filed an appellate brief in which he states he has diligently reviewed the
record, has researched the applicable law, and has found no reversible error in the record. See In re
D.A.S., 973 S.W.2d 296, 299 (Tex. 1998) (extending Anders v. California, 386 U.S. 738 (1967), to
juvenile delinquency proceedings based, in part, on quasi-criminal nature of proceedings). 
Â Â Â Â Â Â Â Â Â Â Â Â Counsel has set out four arguable grounds of error in which he suggests that (1) there is
insufficient Â evidence Â to Â support Â commitment, Â (2) Â the Â admission Â of Â unsworn Â testimony Â is error,
(3) this constituted ineffective assistance of counsel, and (4) the record does not show K.T. was
properly admonished by the trial court. 
(1)Â Â Â Â Â Â Â The Evidence Is Sufficient
Â Â Â Â Â Â Â Â Â Â Â Â We review the sufficiency of the evidence under the standards set out in Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); In re K.H., No. 06-04-00103-CV, 2005 WL 1320162 (Tex.
App.âTexarkana June 5, 2005, no pet.) (not designated for publication). At the disposition hearing,
evidence was introduced to show that K.T. had engaged in at least one instance of criminal conduct
of the grade of felony and that he had committed misdemeanor assault. This is sufficient evidence
under the Texas Family Code to allow commitment to the Texas Youth Commission. SeeTex. Fam.
Code Ann. Â§ 54.04(d)(2), (t) (Vernon Supp. 2004â2005). Error is not shown.
(2)Â Â Â Â Â Â Â Error in Admitting the Unsworn Statements Was Not Preserved
Â Â Â Â Â Â Â Â Â Â Â Â Counsel also suggests there may be error in the consideration of statements made in open
court by an unsworn representative of the probation office, Shelly Smith. In response to a question
by the trial court, Smith provided information about the cost and availability of several alternative
facilities, and about the types of services provided by those facilities. No objection was raised to this
procedure, thus no claim of error has been preserved. Tex. R. App. P. 33.1.
(3)Â Â Â Â Â Â Â Ineffective Assistance of Counsel Has Not Been Shown
Â Â Â Â Â Â Â Â Â Â Â Â Counsel also suggests that the failure to object to Smith's unsworn statements resulted in
ineffective assistance of counsel. In reviewing the ineffective assistance claim, we apply the 
standards set out by Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, 
Strickland requires an appellant to prove by a preponderance of the evidence (1) that his or her
counsel's representation fell below an objective standard of reasonableness and (2) that the deficient
performance prejudiced the defense to the degree that there is a reasonable probability that, but for
the attorney's deficiency, the result of the trial would have been different. 
Â Â Â Â Â Â Â Â Â Â Â Â In this case, although the procedure was objectionable because an individual was questioned
and provided information at the trial without being sworn, no prejudice to the defense has been
shown. That information addressed only the pragmatic realities about placement alternatives other
than the Texas Youth Commission, and the discussion was focused on attempting to find a way to
use one of those facilities. Even if error exists, there is nothing to suggest that the outcome of this
trial would have been different absent that error. 
(4)Â Â Â Â Â Â Â Proper Admonishments Were Given
Â Â Â Â Â Â Â Â Â Â Â Â Finally, the record reflects that the admonishments required by Section 54.03(b) of the Texas
Family Code were provided by the trial court to K.T. at different points in this proceeding. Thus,
error has not been shown.
Â Â Â Â Â Â Â Â Â Â Â Â We have likewise examined the record of this case, and we agree with counsel that no
reversible error appears.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment.
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â August 8, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â August 31, 2005



> See Frank, 688 S.W.2d at 868. The test is whether
a reasonable person in the actor's situation would have retreated. Id.

 3. Burdens of Production and Persuasion

 The issue of self-defense is one of fact to be determined by the jury. See Saxton v. State, 804
S.W.2d 910, 913 (Tex. Crim. App. 1991). Here, then, Oakley had the burden to prove by a
preponderance of the evidence that he acted in self-defense when he repeatedly struck Anderson in
the head with the gun. See Tex. Penal Code Ann. § 2.04(d) (Vernon 2003). Once a defendant
raises the issue of self-defense, the State then bears the burden to persuade the jury, beyond a
reasonable doubt, that the claim of self-defense is not true. See Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003). The State need not specifically disprove the issue of self-defense. Rather,
the burden is incorporated into the State's burden to prove its case. See Saxton, 804 S.W.2d at 913. 
A jury's verdict of guilty is an implicit rejection of the defendant's self-defense theory. Id. at 914.

B. Legal Sufficiency of the Evidence

 1. Standard of Review

 In reviewing the legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the judgment where the jury is the trier of fact. Cardenas v.
State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000). The critical inquiry is whether, after so
viewing the evidence, any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. See Saxton, 804 S.W.2d at 914.

 2. Legally Sufficient Evidence to Support Jury's Verdict

 Viewing the evidence in a light most favorable to the verdict, we point to the testimony of
Anderson, Bridges, and Martin to conclude the evidence is legally sufficient to prove beyond a
reasonable doubt each element of aggravated assault against Anderson. (3)

 According to all three witnesses, Oakley came back over to the house in an angry, hostile
state of mind and was looking for Anderson. Fearful of Oakley, Anderson hid in the makeshift
closet area. Testimony from Anderson, Bridges, and Martin consistently describe the moment at
which Oakley took the gun from his waistband in response to Bridges' refusal to give him the keys
to her mother's car. All three witnesses testified that Oakley pointed the gun at Bridges. Anderson
explained that she had seen Oakley carry the gun on at least one prior occasion when Oakley brought
the gun to "the blind man's house." Anderson added that Oakley had told her it was a .38-caliber
handgun. Able to see that Oakley was pointing this gun at Bridges, Anderson leapt from the closet,
reaching for Oakley's arm in such a way as to prevent him from shooting her daughter. According
to Bridges, Anderson jumped out "[l]ike she was reaching for something." Similarly, Martin
explained that Anderson "jumped up and tried to grab [Oakley's] hand." 

 The record indicates that Oakley first struck Anderson shortly after or as she reached toward
the gun. Oakley then dragged Anderson over the bed to a location between the bed and wall, and
continued to strike her several more times as the gun discharged and as both Anderson and Bridges
were screaming for Oakley to stop.

 It is undisputed that Anderson lunged out of the closet, and Oakley argues he was reasonable
in defending himself from this assailant whose identity he claimed to be unknown at the time. 
However, Oakley still experiences a number of obstacles in this argument. First, we reiterate a
critical conclusion, that the evidence is legally sufficient to support the conclusion that Oakley
brought the gun to the house to find out where Anderson was and that he pointed the gun at Bridges
when Bridges refused to give him the keys.

 From that, we first note the jury was instructed that a person is not justified in acting in
self-defense if he or she seeks an explanation from or discussion with the other person while illegally
carrying a weapon as defined by Section 46.02. See Tex. Penal Code Ann. Â§ 9.31(b)(5)(A)
(Vernon 2003); Williams v. State, 35 S.W.3d 783, 785 (Tex. App.--Beaumont 2001, pet. ref'd). 
Under Section 46.02, a person commits an offense if he or she intentionally, knowingly, or recklessly
carries on or about his or her person a handgun, illegal knife, or club. See Tex. Penal Code Ann.
Â§ 46.02 (Vernon 2003). The record supports the conclusion that Oakley brought a handgun to the
encounter. In addition to that evidence, the State presented evidence of Oakley's prior felony
convictions, which means that Oakley could not have possessed a license to carry the handgun. See
Tex. Gov't Code Ann. Â§ 411.172(a)(3) (Vernon Supp. 2006). Based on such evidence, the jury
could have reasonably concluded Oakley could not avail himself of self-defense--even if the
circumstances would have otherwise justified the use of deadly force--because he brought the gun
to the house to confront Anderson.

 Further, for the jury to accept Oakley's theory of self-defense, it would have to conclude he
reasonably believed it was immediately necessary to use force to protect himself against Anderson's
use or attempted use of unlawful force. See Tex. Penal Code Ann. Â§ 9.31(a) (Vernon 2003). In
this scenario in which Oakley was pointing a gun at Bridges, the jury could have concluded
Anderson's use of force to defend her daughter was reasonable. See Tex. Penal Code Ann. Â§ 9.33
(Vernon 2003). Therefore, under Section 9.31, it was reasonable for the jury to find that Oakley
could not have been justified in using force to protect himself because he was not defending himself
against the use of unlawful force. Put simply, here, the jury was not required to find that Oakley
acted in self-defense when the record shows that Anderson was justified in acting in defense of her
daughter.

 The record contains evidence that Oakley brought the gun to the house to find out where
Anderson was; that he pointed the gun at Bridges; that, in defense of Bridges, Anderson lunged from
the closet; and that Oakley struck her in the head numerous times with the gun.

C. Factual Sufficiency of the Evidence

 Oakley argues that it was Anderson who had the gun initially and that he had to wrestle it
away from her. He points to his relatively minor injuries as evidence that Anderson first attacked
him violently when he started yelling and cursing at Bridges.

 1. Standard of Review

 In a factual sufficiency review, the appellate court views all the evidence in a neutral light
and determines whether the evidence supporting the verdict is so weak that the jury's verdict is
clearly wrong and manifestly unjust or whether the great weight and preponderance of the evidence
is contrary to the verdict. Â Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); see Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); Watson v. State, No. PD-0469-03 (Tex. Crim.
App. Oct. 18, 2006), available at http://www.cca.courts.state.tx.us/OPINIONS/
HTMLOPINIONINFO.ASP?OPINIONID=14579.

 2. Factually Sufficient Evidence to Support the Verdict

 The evidence here is factually sufficient to support the jury's rejection of Oakley's self-defense claim. It is the fact-finder's role to weigh the credibility of the witnesses, to believe or
disbelieve the witnesses' testimony, and to reconcile any conflicts in the evidence. See Swearingen
v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003). The jury was authorized to accept or reject
Oakley's testimony about returning to the house to issue a friendly reminder about church, only to
be attacked by a then-unknown person who jumped from a closet wielding a gun. See Saxton, 804
S.W.2d at 913. 

 The only evidence contradicting the three witnesses' accounts is Oakley's denial that he
owned or carried a gun. He testified that the gun in evidence likely belonged to his mother, but that
he thought the gun was the one that Bridges and Martin had stolen from Oakley's sister's house on
an earlier date. In light of this conflicting evidence on whether Oakley carried a gun to the
confrontation, the jury was authorized to disbelieve Oakley's statements and, instead, accept the
version of events as Anderson, Bridges, and Martin testified. See id.

 In the neutral light of our factual sufficiency review, we again note that Anderson did initially
charge at Oakley and that, therefore, the jury could have believed that Oakley's actions were
reasonable to defend himself. However, we apply the special rules applicable to the use of deadly
force (4) in self-defense. The jury could have reasonably believed that Oakley brought the firearm with
him to the scene. From that premise, the jury could reasonably conclude that Anderson never
threatened Oakley with the use of deadly force and that there was no basis for Oakley to reasonably
believe Anderson presented a threat of deadly force. In such event, Oakley would not be justified
in the use of deadly force. Tex. Penal Code Ann. Â§ 9.32(a)(3)(A). Additionally, before employing
deadly force, a person has a duty to retreat if a reasonable person would have done so. See Frank,
688 S.W.2d at 868. From the record, we see that a reasonable person would have attempted to
retreat and likely could have done so under these circumstances.

 From the record, we know that Oakley was aware of at least three other people in the house
when he first entered. We also know that the majority of the altercation occurred in the back
bedroom of the house. Anderson and Bridges testified that Oakley dragged Anderson to a spot
between the bed and the wall and beat her as she was on the floor. From the testimony and from the
State's exhibits, we see that Anderson's position put her in a location opposite the door to the
bedroom. In other words, Oakley was between the door and Anderson. Oakley, therefore, was very
near the door with Anderson in the other direction, leaving Oakley within steps of an unobstructed
path of retreat. We add that Anderson testified that she was on the floor as he struck her and that she
soon became nearly lifeless and unable to control her head. Further, Bridges testified that she hit
Oakley twice with a television set and that the blows caused him to stumble out toward the living
room. Instead of running toward the exit, however, Oakley continued to beat Anderson. The record
also reveals that the neighbor, Balker, broke the glass out of a bedroom window as he dove out when
Oakley confronted Bridges, leaving a clear, safe, and immediate escape route from the bedroom.

 The law imposes a duty on Oakley to retreat before using deadly force, and the record
demonstrates that, although Oakley had ample reason and opportunity to do so, he did not. So, even
if the jury were to have believed Oakley's version of events, the evidence was still factually sufficient
to support the jury's rejection of Oakley's argument that his violent attack on Anderson was justified. 
We cannot say the evidence of guilt considered by itself is so weak that the jury's verdict is clearly
wrong and manifestly unjust or that the great weight and preponderance of the evidence is contrary
to the verdict. See Watson, http://www.cca.courts.state.tx.us/OPINIONS/
HTMLOPINIONINFO.ASP?OPINIONID=14579. We, therefore, conclude the evidence is factually
sufficient to support the jury's implied finding against Oakley on the issue of self-defense.

III. PROPORTIONALITY OF SENTENCE

 Oakley also contends the sentence of seventy-five years' confinement is grossly
disproportionate to the offense for which he was convicted. (5) 

 Texas courts have traditionally held that, as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Oakley's
sentence falls within the applicable range of twenty-five to ninety-nine years or life, a range
enhanced by his two prior felony convictions. See Tex. Penal Code. Ann. Â§Â§ 12.42(d), 22.02(b)
(Vernon Supp. 2006).

 However, we have recognized that a prohibition against grossly disproportionate punishment
survives under the Eighth Amendment to the United States Constitution apart from any consideration
of whether the punishment assessed is within the range established by the Legislature. U.S. Const.
amend. VIII; see Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.--Texarkana 1999, no pet.). Our
proportionality analysis is guided by (1) the gravity of the offense and the harshness of the penalty;
(2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed
for commission of the same crime in other jurisdictions. See Solem v. Helm, 463 U.S. 277, 292
(1983); Fluellen v. State, 71 S.W.3d 870, 873 (Tex. App.--Texarkana 2002, pet. ref'd). Only if we
find that the sentence is grossly disproportionate to the offense will we then consider the remaining
factors of the Solem test and compare the sentence received to sentences for similar crimes in the
same jurisdiction and to sentences for the same crime in other jurisdictions. See Alberto v. State, 100
S.W.3d 528, 530 (Tex. App.--Texarkana 2003, no pet.).

 Here, Oakley's seventy-five-year sentence is quite harsh. However, considering his criminal
history and the brutality of the instant offense, we cannot say that the sentence is grossly
disproportionate to the offense. Further, the record contains no evidence comparing this sentence
with others in the same jurisdiction for this offense, or those imposed on defendants in other
jurisdictions who committed a similar offense. See Delacruz, 167 S.W.3d at 906. For all of these
reasons, Oakley has failed to show that his sentence was disproportionate to the offense for which
he was convicted.

IV. CONCLUSION

 We conclude the evidence is legally and factually sufficient to support the jury's implicit
rejection of Oakley's self-defense claim. We further conclude Oakley has failed to show that the
sentence imposed was disproportionate to the offense he committed. Accordingly, we overrule his
points of error and affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: August 30, 2006

Date Decided: October 24, 2006


Do Not Publish

1. Section 22.01 provides that a person commits the offense of assault if he or she:


 (1) intentionally, knowingly, or recklessly causes bodily injury to another,
including the person's spouse;


 (2) intentionally or knowingly threatens another with imminent bodily injury,
including the person's spouse; or


 (3) intentionally or knowingly causes physical contact with another when the
person knows or should reasonably believe that the other will regard the contact as
offensive or provocative.


Tex. Penal Code Ann. Â§ 22.01(a) (Vernon Supp. 2006).
2. As a matter of law, Oakley could not have been in retreat at the moment he utilized deadly
force. See Juarez v. State, 886 S.W.2d 511, 513-14 (Tex. App.--Houston [1st Dist.] 1994, pet.
ref'd); see also Bartmess v. State, 708 S.W.2d 905, 908 (Tex. App--Tyler 1986, no pet.) ("The actual
use of deadly force necessarily implies no retreat at the moment the force was applied. One may be
in retreat and then abandon that retreat by using deadly force.").
3. Oakley does not challenge the deadly weapon element of the offense. The Texas Penal Code
specifically provides that a firearm is a deadly weapon. See Tex. Penal Code Ann.
Â§Â 1.07(a)(17)(A) (Vernon Supp. 2006).
4. Again, "deadly force" means force that is intended or known by the actor to cause, or in the
manner of its use or intended use is capable of causing, death or serious bodily injury. Tex. Penal
Code Ann. Â§ 9.01(3). The Texas Penal Code defines "serious bodily injury" as "bodily injury that
creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted
loss or impairment of the function of any bodily member or organ." See Tex. Penal Code Ann.
Â§Â 1.07(a)(46) (Vernon Supp. 2006). So, even if the jury determined that beating someone in the head
repeatedly with a handgun while the handgun is firing does not create a substantial risk of death, then
the jury was certainly authorized to accept as true Anderson's testimony regarding the lasting impact
her head injuries had on her vision and memory. 
5. Oakley did not object to the sentence on the ground it was disproportionate to the crime, or
on any other ground, at the time it was imposed. However, his motion for new trial contains a
contention that the sentence was disproportionate to the offense. A motion for new trial, in this
context, is an appropriate way to preserve the claim for review. See Williamson v. State, 175 S.W.3d
522, 523-24 (Tex. App.--Texarkana 2005, no pet.); Delacruz v. State, 167 S.W.3d 904 (Tex.
App.--Texarkana 2005, no pet.).